Ahren A. Tiller Esq. [SBN: 250608]
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone (619) 894-8831
Facsimile: (866) 444-7026
Email: Ahren.Tiller@blc-sd.com

Attorneys for Plaintiff
MAGGIE A. ONG

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGGIE A. ONG,<br><br>  Plaintiff,<br><br>vs.<br><br>CREDIT CONTROL LLC and<br><br>DEPARTMENT STORES NATIONAL<br><br>BANK<br><br>  Defendant, | Case No.: **'22CV1390 MMABLM**<br><br>**COMPLAINT FOR DAMAGES FOR (1) VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (2) THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAL. CIV. CODE §§ 1788-1778.32); AND (3) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §227)**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES
### INTRODUCTION

1. MAGGIE A. ONG (hereinafter referred to as "Plaintiff"), by and through her Counsel of record, brings this action against CREDIT CONTROL LLC (hereinafter as "CREDIT CONTROL"), and DEPARTMENT STORES NATIONAL BANK (hereinafter as "DSNB") (hereinafter collectively referred to as "Defendants"), pertaining to actions by Defendants to unlawfully collect a debt allegedly owed by Plaintiff, including but not limited to, collection via the use of

an Automated Telephone Dialing System ("ATDS") and/or Artificial or Prerecorded Voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), and the Rosenthal Fair Debt Collection Practices Act Cal. Civ. C. §§ 1788-1788.32 ("RFDCPA"), thereby invading Plaintiff's privacy, and causing Plaintiff damages.

2. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.  Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*, to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

3. The California legislature determined that unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system.  The legislature further determined there is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty, and due regard for the rights of others.  The legislature's explicit purpose of enacting the Rosenthal Fair Debt Collection Practices Act of California (hereinafter "RFDCPA") was to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts.[1]  Cal. Civ. Code § 1877.17 incorporates the FDCPA into the RFDCPA, by stating that every debt collector collecting or attempting to collect a

---

[1] CA Civil Code §§ 1788.1(a)-(b)

consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

4. The Telephone Consumer Protections Act (hereinafter referred to as "the TCPA") was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012).

5. In enacting the TCPA, Congress specifically found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call . . ." *Id.* at §§ 12-13. See also, *Mims,* 132 S. Ct., at 744.

6. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.
>
> *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 638 (7th Cir. 2012)

7. Plaintiff makes the allegations contained herein on information and belief, except as to those allegations regarding himself, which are made and based upon personal knowledge.

## JURISDICTION AND VENUE

8. This action is based on Defendants' violations of the FDCPA, RFDCPA, and TCPA.

9. This Court has jurisdiction over both Defendants, pursuant to 28 U.S.C. § 1331, as the unlawful practices alleged herein involve a federal question under both the FDCPA and TCPA.

10. This Court further has supplemental jurisdiction over Plaintiff's California Causes of action, pursuant to 28 U.S.C. § 1367(a), as Plaintiff's California state law claims are so related to Plaintiff's Federal TCPA and FDPCA claims in this action, that they form part of the same case or controversy.

11. The unlawful practices alleged herein occurred in California, in the County of San Diego and violated California's Civil Code §§ 1788 - 1788.32.

12. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because all or some of the unlawful practices and violations of law alleged herein occurred and are occurring in the County of San Diego, California.  Furthermore, Defendant regularly conducts business within State of California, County of San Diego, and Plaintiff resides in San Diego County, California.

## PARTIES

13. Plaintiff is, and was at all times mentioned herein, a natural person residing in the County of San Diego, in the State of California.

14. Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and therefore Plaintiff is a "debtor" as that term is describe by Cal Civ. Code §1788.2(h).

15. Defendant DSNB is a National Banking Association. Defendant DSNB operates as a bank, which provides products and services including saving accounts, loans, mortgages, investment funds, credit and debit cards, insurance, electronic banking, capital markets and advisory, and private banking. Defendant DSNB serves customers worldwide, throughout the State of California, including this District.  Defendant DSNB regularly conducts business in this District, including

via online banking accessibility. Defendant's corporate headquarters is in Sioux Falls, SD.

16. Defendant DSNB regularly attempts to collect using mails, electronic communication, and telephone, "consumer debts" allegedly owed to it, as that term is defined by Cal. Civ. Code §1788.2(f).

17. When individuals owe Defendant DSNB debts for regular monthly payments on consumer loans and credit cards, and other similar obligations, Defendant DSNB collects on those consumer debts owed to it through the mail, electronic communication, and telephone. Therefore, Defendant DSNB is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c) and engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b).

18. Defendant DSNB is, and all times mentioned herein, was a corporation and "person," as defined by 47 U.S.C. § 153(39).

19. When individuals owe DSNB debts for regular monthly payments on consumer loans and credit cards, and other similar obligations, DSNB collects on those consumer debts owed to them using the mail, electronic communication, and the telephone. Therefore, DSNB is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c) and engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b).

20. Defendant CREDIT CONTROL is a Missouri Corporation whose primary business is the collection of debts on behalf of its clients. Defendant CREDIT CONTROL's headquarters is in Earth City, MO.

21. Defendant CREDIT CONTROL regularly attempts to collect using mails, electronic communication, and telephone, "consumer debts" allegedly owed to its clients, as that term is defined by Cal. Civ. Code §1788.2(f).

22. When individuals owe its clients debts for consumer loans and credit cards, and other similar obligations, Defendant CREDIT CONTROL collects on behalf of its clients for those consumer debts through use of the mail, electronic

communication, and telephone.  Therefore, Defendant CREDIT CONTROL is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c) and engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b).

23. Defendant CREDIT CONTROL is the agent of DSNB acting within the scope of said agency relationship by using a instrumentality of interstate commerce and/or the mails in CREDIT CONTROL's business, in which the principal purpose of which is the collection of debts, and Defendant CREDIT CONTROL regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to DSNB.  Therefore, Defendant CREDIT CONTROL is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(5).

24. Defendant CREDIT CONTROL is, and all times mentioned herein, was a corporation and "person," as defined by 47 U.S.C. § 153(39).

25. Cal. Civ. Code § 1877.17 states that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

26. At all times relevant hereto, Defendant CREDIT CONTROL used, controlled and or operated an "automatic telephone dialing system" ("ATDS") as that term is defined by 47 U.S.C. § 227(a)(1) and/or placed calls to Plaintiff's cellular telephone using an automated or prerecorded voice ("Recorded Voice") as that term is defined in 47 U.S.C. § 227(b)(1)(A).

27. This case involves money, property, or their equivalent, due, or owing or alleged to be due or owing from a natural person by reason of a "consumer credit transaction."  The debt owed to DSNB Bank and collected upon by CREDIT CONTROL is an obligation incurred primarily for personal, family, or household purposes, and a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes.  Thus, this

action arises out of a "debt" and "consumer debt" as those terms are defined by 15 U.S.C. § 1692(a)(5) and Cal. Civ. Code §1788.2(f) respectively.

## GENERAL ALLEGATIONS

28. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

29. Prior 2018, Plaintiff was issued a retail consumer credit account by Defendant DSNB (hereinafter referred to as the "Credit Account"), for a Macy's retail store card. The Credit Account was issued, serviced, and originally collected upon by Defendant DSNB.

30. Plaintiff made payments toward her DSNB Credit Account when she took it out and maintained good standing until early 2021, when Plaintiff fell on financial hardship and was unable to maintain the regular monthly payments to the Credit Account.

31. On or about December of 2021, after approximately six (6) months of being in default, Defendant DSNB retained Defendant CREDIT CONTROL to collect on the Credit Account on their behalf as their agent.

32. Defendant CREDIT CONTROL acted as Defendant DSNB's authorized agent for the express purpose of debt collection. All acts in furtherance of collecting on the Credit Account were within the scope of that agency relationship.

33. On or about January of 2022, Defendant CREDIT CONTROL began calling Plaintiff to collect on the Credit Account repeatedly, often 2-3 times per day, nearly every day, and often using a pre-recorded and/or automated voice message. The collection calls were made to Plaintiff's cellular telephone.

34. Plaintiff sought out and retained an attorney to represent her with regards to the debts allegedly owed to Defendant DSNB and serviced by Defendant CREDIT CONTROL.

35. On March 25, 2022, an associate attorney at BLC Law Center, APC drafted and

mailed a Cease-and-Desist letter to Defendant CREDIT CONTROL, whereby Plaintiff's Attorney stated in writing that Plaintiff was revoking consent to call her via the use of an ATDS and/or recorded voice and/or automated voice, that Plaintiff had retained Counsel, and that CREDIT CONTROL needed to cease calling Plaintiff pursuant to the RFDCPA ("March 25, 2022 Letter"). The March 25, 2022 Letter referenced the last four digits of Plaintiff's social security number next to her name to help Defendant CREDIT CONTROL identify Plaintiff's account.

36. The March 25, 2022 Letter was sent to the address listed on CREDIT CONTROL's website as their address for mailing correspondences, via a third-party mailing service which certified its mailing.

37. The March 25, 2022 Letter informed CREDIT CONTROL that Plaintiff was represented by Counsel, thus the letter constituted written notice pursuant to Cal. Civ. Code §§ 1788.14(c) that Plaintiff was represented by an attorney with respect to any debt allegedly owed to or serviced by Defendant, and request was thereby made that all communications regarding this alleged consumer debt must be directed exclusively to Plaintiff's attorney, and the letter clearly revoked any prior consent to contact Plaintiff via the use of an automated dialing system phone, text, or other method, including but not limited to calls with a pre-recorded and/or automated voice messages.

38. Despite CREDIT CONTROL receiving the March 25, 2022 Letter, Defendant CREDIT CONTROL continued to willfully call Plaintiff's cellular telephone and request payments using an automated voice message and/or a prerecorded voice message and/or Automated Telephone Dialing System ("ATDS"), often 2-3 times per day, almost every single day.

39. Defendant CREDIT CONTROL called Plaintiff over fifty (50) times in total, after receipt in writing that Plaintiff revoked any prior consent to call Plaintiff via the use of an ATDS and/or Recorded Voice, had retained Counsel for any debts

serviced by CREDIT CONTROL, and after providing an explicit warning that all direct contact with Plaintiff should cease pursuant to the RFDCPA.

40. Despite having received Plaintiff's March 25, 2022 Letter sent to Defendant CREDIT CONTROL's address for correspondences via a third-party mailing service that confirms and certifies their mailing, CREDIT CONTROL's agents continued to call Plaintiff through to date, often multiple times per day in rapid succession, using a prerecorded and/or automated voice to collect said consumer debt from Plaintiff.

41. Defendant CREDIT CONTROL, or its agents or representatives, contacted Plaintiff on her cellular telephone over fifty (50) times since March 25, 2022, including using an ATDS and/or prerecorded voice and/or automated voice as those terms are defined in 47 U.S.C. § 227(a)(1) and/or 47 U.S.C. § 227(b)(1)(A).

42. Many of Defendant CREDIT CONTROL's calls to Plaintiff after receiving the letter contained an "artificial" and/or "prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

43. The multiple calls made by CREDIT CONTROL or its agents after March 25, 2022, were therefore made in violation of 47 U.S.C. § 227(b)(1).

44. Despite receipt of Plaintiff's March 25, 2022, sent to Defendant CREDIT CONTROL's mailing address, which provided irrefutable notice that Plaintiff had revoked consent to call her cellular telephone by any means and that she had retained Counsel regarding these alleged debts, Defendant CREDIT CONTROL continued to call Plaintiff at least fifty (50) times.

45. The actions taken by Defendant CREDIT CONTROL alleged herein were made as the agent(s) and/or sub-agent(s) of Defendant DSNB, and all acts were committed in the scope of the agent(s) and/or sub-agent(s) employment and in furtherance of Defendants DSNB's interests

## CAUSES OF ACTION

### I.

### FIRST CAUSE OF ACTION

**Violations of the Fair Debt Collection Practices Act**

**(15 U.S.C. § 1692 e***t. seq.***)**

[AS TO ALL DEFENDANTS]

46. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

47. 15 U.S.C. § 1692d(5) provides in pertinent part,

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number

48. Further, 15 U.S.C. § 1692c(a)(2) states in pertinent part:

> (a) …Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—…
>
> > (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer;

49. When Plaintiff's Counsel sent the March 25, 2022 Letter to Defendant CREDIT CONTROL, Defendant CREDIT CONTROL was aware, or reasonably should have been aware that Plaintiff was represented by an attorney.

50. When Plaintiff's Counsel sent the March 25, 2022 Letter to Defendant CREDIT CONTROL, Defendant DSNB was constructively aware, or reasonably should

- 10 -

*MAGGIE A. ONG vs. CREDIT CONTROL LLC ET. AL.. - Complaint for Damages*

have been constructively aware, that Plaintiff was represented by an attorney.

51. Therefore, by calling Plaintiff on her cellular phone over fifty (50) times after receipt of the March 25, 2022 Letter from Plaintiff's Counsel, Defendant CREDIT CONTROL violated 15 U.S.C. §§ 1692c(a)(2) and 1692d(5).

52. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA.

53. As a direct and proximate result of Defendants CREDIT CONTROL' violations of 15 U.S.C. §1692 *et. seq.*, Plaintiff suffered emotional distress.

54. The actions taken by Defendant CREDIT CONTROL alleged herein were made as the agent(s) of Defendant DSNB and were committed in the scope of the agency relationship and in furtherance of the principal, Defendants DSNB's interests.  As such, Defendant DSNB is vicariously liable for its agent's violations of 15 U.S.C. §1692 *et. seq.*

55. As a result of the constant collection calls by Defendant CREDIT CONTROL on behalf of Defendant DSNB, Plaintiff has experienced anxiety, irritability, as the constant and harassing collection calls by Defendant CREDIT CONTROL are overwhelming.  Therefore, Plaintiff has actual damages as a result of Defendants' violations of 15 U.S.C. §1692 *et. seq.*

## II.
## SECOND CAUSE OF ACTION
**Violations of California Rosenthal Fair Debt Collection Practices Act**
**(California Civil Code § 1788 *et. seq.*)**
[AS TO ALL DEFENDANTS]

56. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

57. Cal. Civ. Code §1788.14(c) provides in relevant part,

> No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:
>
> (c) Initiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question. This subdivision shall not apply where prior approval has been obtained from the debtor's attorney, or where the communication is a response in the ordinary course of business to a debtor's inquiry.

58. When Plaintiff's Counsel sent the March 25, 2022 Letter to Defendant CREDIT CONTROL, Defendant CREDIT CONTROL was aware, or reasonably should have been aware, that Plaintiff was represented by an attorney.

59. When Plaintiff's Counsel sent the March 25, 2022 Letter to Defendant CREDIT CONTROL, Defendant DSNB was constructively aware, or reasonably should have been constructively aware, that Plaintiff was represented by an attorney.

60. By calling Plaintiff on her cellular phone over fifty (50) times after receipt of the March 25, 2022 Letter from Plaintiff's Counsel, Defendant CREDIT CONTROL violated Cal. Civ. Code §1788.14(c). Therefore, the foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

61. The actions taken by Defendant CREDIT CONTROL alleged herein were made as the agent(s) of Defendant DSNB and were committed in the scope of the agency relationship and in furtherance of the principal, Defendants DSNB's interests. As such, Defendant DSNB is vicariously liable for its agent's violations of Cal. Civ. C. § 1788 *et. seq.*

62. As a result of the constant collection calls by Defendant CREDIT CONTROL on behalf of Defendant DSNB, Plaintiff has experienced anxiety, irritability as the constant and harassing collection calls by Defendant CREDIT CONTROL are overwhelming. Therefore, Plaintiff has suffered actual damasges as a result of

Defendants' violations of Cal. Civ. C. § 1788 et. seq.

## III.

## THIRD CAUSE OF ACTION

**Negligent Violations of the TCPA**

**(47 U.S.C. § 227 et. seq.)**

[AS TO ALL DEFENDANTS]

63. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

64. Through the March 25, 2022 Letter sent by Plaintiff's Counsel to Defendant CREDIT CONTROL, Plaintiff revoked any alleged consent for Defendant CREDIT CONTROL or its agents or representatives to call Plaintiff on her cellular telephone via the use of an ATDS and/or prerecorded voice and/or automated voice.

65. The foregoing acts and omissions of Defendant CREDIT CONTROL constitute numerous and multiple negligent violations of the TCPA, including but not limited to each one of the above-cited provisions of 47 U.S.C. § 227, et. seq.

66. The actions taken by Defendant CREDIT CONTROL alleged herein were made as the agent(s) of Defendant DSNB and were committed in the scope of the agency relationship and in furtherance of the principal, Defendants DSNB's interests. As such, Defendant DSNB is vicariously liable for its agent's violations of 47 U.S.C. § 227 et. seq.

67. As a result of Defendant CREDIT CONTROL's negligent violations of 47 U.S.C. §227, et. seq., Plaintiff is entitled to an award of $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## IV.

## FOURTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the TCPA

**(47 U.S.C. § 227 *et. seq.*)**

[AS TO ALL DEFENDANTS]

69. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

70. Through the March 25, 2022 Letter sent by Plaintiff's Counsel to Defendant CREDIT CONTROL, Plaintiff revoked any alleged consent for Defendant CREDIT CONTROL or its agents or representatives to call Plaintiff on her cellular telephone via the use of an ATDS and/or Recorded Voice.

71. The foregoing acts of Defendant CREDIT CONTROL constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

72. Therefore, since Defendant CREDIT CONTROL or its agents or representatives continued to call Plaintiff despite indisputably being informed not to call Plaintiff on multiple occasions through multiple different means, and that Plaintiff had revoked any alleged prior consent to call Plaintiff's cellular telephone via the use of an ATDS and/or Recorded Voice, Defendant CREDIT CONTROL's acts were willful.

73. The actions taken by Defendant CREDIT CONTROL alleged herein were made as the agent(s) of Defendant DSNB and were committed in the scope of the agency relationship and in furtherance of the principal, Defendants DSNB's interests. As such, Defendant DSNB is vicariously liable for its agent's violations of 47 U.S.C. § 227 *et. seq.*

74. As a result of Defendant CREDIT CONTROL's knowing and/or willful violations of 47 U.S.C. §227, *et. seq.*, the Plaintiff is entitled to an award of $1,500 in statutory damages for each one of CREDIT CONTROL's knowing

- 14 -

*MAGGIE A. ONG vs. CREDIT CONTROL LLC ET. AL.. - Complaint for Damages*

and/or willful violations of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(C).

75. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff having set forth the claims for relief against Defendants herein, respectfully request this Court enter a Judgment against Defendants jointly and severally as follows:

a. As to the First Cause of Action, an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1), according to proof.

b. As to the First Cause of Action, an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A).

c. As to the First Cause of Action, an award of reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

d. As to the Second Cause of Action, an award of actual damages pursuant to Cal. Civ. Code §1788.30(a) according to proof.

e. As to the Second Cause of Action, an award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b).

f. As to the Second Cause of Action, an award of reasonable attorney's fees and costs pursuant to Cal. Civ. Code §1788.30(c).

g. As to the Third Cause of Action, $500 in statutory damages for each and every one of Defendants' negligent violations of 47 U.S.C. §227(b)(1), pursuant to 47 U.S.C. § 227(b)(3)(B).

h. As to the Fourth Cause of Action, $1,500.00 in statutory damages for each and every one of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(b)(1), pursuant to 47 U.S.C. § 227(b)(3)(C).

i. As to the Third and Fourth Causes of Action, injunctive relief prohibiting such conduct in the future.

- 15 -

MAGGIE A. ONG vs. CREDIT CONTROL LLC ET. AL.. - Complaint for Damages

j.  For such other and further relief as the Court may deem just and proper.

Dated: September 13, 2022,     **BLC Law Center, APC**

*s/ Ahren A. Tiller*
ahren.tiller@blc-sd.com

Ahren A. Tiller, Esq.
Attorneys for Plaintiff

# DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands a trial by jury on all issues triable by a jury.

Dated: September 13, 2022,					**BLC Law Center, APC**

							 *s/ Ahren A. Tiller*
							ahren.tiller@blc-sd.com

							Ahren A. Tiller, Esq.
							Attorneys for Plaintiff